ÍJiCHOLsOír, C. J.,
delivered the opinion of the Court.
Plaintiif in error, whilst a feme sole, bought goods, wares and merchandise, of defendants in error, to the amount of $1,232. She afterward married, and in settlement of said account, her husband and herself executed their joint note to defendants in error, for the amount of the account. Soon after the death of Wm. Parker, her husband, the attorney of defendants in error, called on plaintiff in error, and presented to her the note and account, and requested payment. “She replied that she could not pay the debt just then but said it was a just debt, and she did not intend that the estate of her late husband, William Parker, should pay any part of the debt, as it was her debt that she made before she married him. She said that she would pay the claim, and asked indulgence for a short time, which witness promised to give and did give.-”
Upon the failure to pay,, suit was brought against her in the Circuit Court of Monroe county. The declaration contained two counts — one on the account, and the other on the note. The .plaintiff in error put in the plea of nil debit, and several special pleas, to the effect that she was not liable on the account, because it was extinguished by the note, and not liable on the note, because she was a feme covert when it was exe- *520 euted. To these pleas there were' replications and issues ioined.
The jury found a verdict in favor of defendants in error on the second count of the declaration, which was on the note; and upon the Court discharging a rule for a new trial, plaintiff in error appealed in error to this Court.
When the Circuit Judge came to charge the jury, he was requested by the plaintiff in error to withdraw from them the evidence before detailed, as to the promises by plaintiff in error to pay the debt soon, and her request for indulgence. The Judge refused to withdraw the evidence; and his refusal to do so is the error now relied on for a reversal of the judgment.
The first question to be decided is, what was the legal effect of the execution of the note by complainant ánd her husband, on the account made by complainant before her marriage? Was it an absolute extinguishment and satisfaction of the prior indebtedness resting upon the account? In' Chitty on Bills, 172, it is said: “A person, by taking a bill of exchange or promissory note, in satisfaction of a former simple contract debt, or of a simple contract debt created at the time, suspends Ms remedy, and is precluded from afterwards waiving it, and suing the person who gave it to him for the original debt, before the bill has been dishonored; for the taking of the bill is prima facie a satisfaction of the debt, and, at least, amounts to an agreement to give the person delivering it credit for the length of time it has to run.” In Robinson v. Branch, 3 Sneed, 506, it was held that “the execution of a note, under seal, is prima *521 fade evidence of a settlement of all pre-existing accounts between tbe parties, and casts the burden of proof upon the party asserting otherwise.” It follows that the execution of the note by complainant and her husband, was not an absolute extinguishment and satisfaction of the original debt. It was a suspension of the right to sue on the original debt until the note was dishonored; and it was prima faeie evidence that the account was settled and satisfied.
The next question is as to the legal effect of the execution of the note by complainant, she being at the time a feme covert. With certain exceptions, a married woman is incapable of entering into any contract so as to bind herself personally, or of suing or being sued in her OAvn name, during her coverture.
By the execution of the note, therefore, she incurred no liability to be sued. But it does not follow that the original debt was thereby in any way affected. By her marriage the law suspended the right of her creditor to enforce his claim by suit against her; he could only enforce the claim by suit against her husband. The giving of the note by the husband had no other effect on the original debt, as we have seen, than to suspend the right of the defendant in error to sue,' except upon the note, until payment thereof was refused. After payment of the note was refused, suit could be brought against the husband on either the note or the account; but during the coverture, suit could be brought against the wife alone upon neither the note nor the account. This was the legal consequence of her being a married woman. But whilst the note, during the coverture, ere- *522 ated no obligation upon her, yet it cannot properly be said to be a contract void ab initio, as it would have been if given for a debt created during the coverture. Having been given for a legal liability existing before her marriage, the note can only be regarded as a nullity and as having no obligatory force during the coverture, and not after she became discovert, unless so ratified as to revive the original liability.
The next question is, as to the legal effect of the promise made by plaintiff in error after she became dis-covert. It must be conceded that she was then under no legal obligation to pay the note. As the jury found by their verdict that she was liable on the account, and as we are not called on to determine whether that finding was erroneous or not, we need not express any opinion on that point. But as the jury found that the plaintiff in error was liable on the note, and as this finding was manifestly based upon the evidence of her promise to pay, the question is presented, was the Circuit Judge-in error in refusing to exclude that evidence from the jury?
It is well settled that “a moral obligation is not alone a sufficient legal consideration to support either an express or implied promise.” 1 Story on Contr., § 465. But this general rule is subject to this exception: "A moral obligation to pay ■ money or to perform a duty is a good consideration for a promise to do so, where there was originally an obligation to pay the money or to do the duty, which was enforceable at law, but for the interference of some rule of law.” 1 Parsons on Contr., 361; 1 Story on Contr.', § 466.
*523 If plaintiff in error Rad been under no previous liability to pay the debt for -which the note was given, her simple promise to pay would have created no liability, as it would have been a promise to pay a contract void ab initio, and, therefore, not capable of ratification. 1 Story on Contr., § 468. But- because she was under a legal obligation, before her marriage, to pay for the goods purchased, when the impediment to the enforcement of that obligation, produced by her marriage, was removed by her becoming discovert, this previous legal liability constituted a sufficient moral obligation tó support the promise to pay the debt. When the note and account were presented to her, and payment was requested, her promise to pay the debt might well be regarded by the jury as virtually a re-delivery, as well as a ratification of the note; and being under a moral obligation to pay, as she freely acknowledged, the verdict of the jury was well supported by the proof.
There was, therefore, no error in the refusal of. the Circuit Judge to exclude from the jury' the evidence of the promise by plaintiff in error to pay the debt, and we affirm the judgment.